IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>BARYON J. WHITLEY,<br><br>      Defendant. | Case No. 3:24-CR-30126-NJR-1 |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

On September 17, 2024, a federal grand jury charged Defendant Baryon J. Whitley with one count of being a Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1). The indictment alleges that, on or about March 24, 2024, Whitley, knowing that he had previously been convicted of a felony (Aggravated Unlawful Use of a Weapon under Illinois law), "knowingly possess[ed] a firearm, said firearm having been shipped and transported in interstate commerce." (*Id.*). Whitley now moves to dismiss the indictment, arguing that, as applied to him, section 922(g)(1) violates the Second Amendment in light of the United States Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).[1]

---

[1] A superseding indictment was filed on September 16, 2025, charging Whitley with a second count of being a Felon in Possession of a Firearm. (Doc. 31). Although Whitley's motion to dismiss was filed before the superseding indictment and thus only applied to the first count under section 922(g)(1), he has asked the Court to construe it as an attack on the validity of both charges under section 922(g)(1) against him. (Doc. 35). The Court agrees and will consider Whitley's motion to dismiss with respect to both counts under section 922(g)(1).

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Rule 12 authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds. *See United States v. Coscia*, 866 F.3d 782, 790 (7th Cir. 2017) (considering defendant's contention that indictment must be dismissed because statute under which it is brought is unconstitutionally vague). A court may decide all questions of law raised in a motion to dismiss, including the constitutionality and interpretation of a federal statute. *See United States v. Sorich*, 523 F.3d 702, 706 (7th Cir. 2008).

A constitutional challenge to a statute can be brought as either a facial challenge or an as-applied challenge. *United States v. Seiwert*, 152 F.4th 854, 860 (7th Cir. 2025). To succeed on an as-applied challenge, as Whitley raises here, the moving party must show the statute is unconstitutional because of the way it was applied to the particular facts of their case. *See United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

## DISCUSSION

The Second Amendment to the U.S. Constitution guarantees the right of the people to keep and bear arms. *Dist. of Columbia v. Heller*, 554 U.S. 570, 635 (2008). Like the First Amendment, "it is the very *product* of an interest balancing by the people," which "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* (emphasis in original). 18 U.S.C. § 922(g)(1), on the other hand, criminalizes the possession of a firearm by any person who has been

convicted of a crime punishable by imprisonment for more than one year. Whitley appears to argue that the Second Amendment protects his right to bear arms and that section 922(g)(1) is unconstitutional as applied to him.

The Supreme Court has held that the right to keep and bear arms is among the "fundamental rights necessary to our system of ordered liberty." *United States v. Rahimi*, 144 S. Ct. 1889, 1897 (2024) (quoting *McDonald v. Chicago*, 561 U.S. 742, 778 (2010)). "Like most rights," though, "the right secured by the Second Amendment is not unlimited." *Id.* (quoting *Heller*, 554 U.S. at 626); *see also United States v. Carbajal-Flores*, 143 F.4th 877, 880 (7th Cir. 2025) ("The protections contained in the Second Amendment have their limits.").

The test for analyzing the constitutionality of firearm restrictions is provided by *Bruen*. 597 U.S. at 24. Under *Bruen*, a court must first determine whether the "Second Amendment's plain text covers an individual's conduct." 597 U.S. at 24. If it does, the Constitution presumptively protects that conduct and the burden shifts to the government to demonstrate that the regulation "is consistent with this Nation's historical tradition of firearm regulation." *Id.* To determine whether a challenged law is consistent with the Nation's regulatory tradition, courts "must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'applying faithfully the balance struck by the founding generation to modern circumstances.'" *Rahimi*, 602 U.S. at 692 (quoting *Bruen*, 597 U.S. at 29) (alteration omitted). This analogical inquiry compares a modern-day regulation to its historical precursors by examining "how and why" each "burden[s] [or burdened] a law-abiding citizen's right to armed self-defense." *Bruen*, 597 U.S. at 29.

The analysis demanded by *Bruen* "is neither a regulatory straightjacket nor a regulatory blank check." *Id.* at 30. "[I]f laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Rahimi*, 602 U.S. at 692. But even if the reason for the regulation is permissible, the law "may not be compatible with the right if it does so to an extent beyond what was done at the founding." *Id.* "And when a challenged regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional muster.'" *Id.* (quoting *Bruen*, 597 U.S. at 30). Notably, the Supreme Court's most recent examination of the scope of the Second Amendment in *Rahimi*, while addressing the disarmament of individuals subject to a restraining order under section 922(g)(8), reiterated *Heller*'s finding that prohibitions, like those on the possession of firearms by "felons and the mentally ill," are "presumptively lawful." *Id.* at 699 (quoting *Heller*, 554 U.S. at 626, 627, n.26).

Whitley contends that the permanent disarmament of felons cannot be squared with the Second Amendment under *Bruen*. He claims that section 922(g)(1) is unconstitutional as applied to him based on a dissenting opinion in *Bevis v. City of Naperville, Ill.*, 85 F.4th 1175, 1226-27 (7th Cir. 2023), where Judge Brennan criticized the panel's reliance on certain historical arms regulations to uphold the constitutionality of present-day restrictions on assault weapons. He also claims that "continued uncertainty" permeates judicial decision-making under *Bruen*, and that his as applied challenge may thus be cognizable. Realizing, however, that a dissenting opinion, by its nature, does not

offer a legal basis to grant him the relief he seeks, Whitley concedes that his motion is advanced only for the sake of "preserv[ing] this challenge." (Doc. 25, p. 3). Whitley also recognizes that this Court in *United States v. Thompson*, No. 3:22-CR-30032, 2024 WL 4475023, at *4 (S.D. Ill. Oct. 11, 2024), and *United States v. Taylor*, No. 3:24-CR-30015, 2025 WL 276543, at *4 (S.D. Ill. Jan. 23, 2025), rejected the exact argument he raises here. Whitley does not attempt to distinguish these cases or offer a substantive argument against the constitutionality of section 922(g)(1). The Court nevertheless accepts Whitley's argument for the limited purpose of preserving an as applied challenge to section 922(g)(1) and will address it accordingly.

*Heller* itself could be read to foreclose Whitley's argument out of the gate. There, the Supreme Court expressly acknowledged the "longstanding prohibitions on the possession of firearms *by felons* and the mentally ill." *Heller*, 554 U.S. at 626 (emphasis added); *see also United States v. Williams*, 113 F.4th 637, 643 (6th Cir. 2024) (recognizing section 922(g)(1) as "presumptively lawful" under *Heller*). It is thus not surprising that *Heller* associated the right to bear arms with "law-abiding" citizens. *Id.* at 625. And, when describing people who possess rights under the Second Amendment, *Bruen* itself repeatedly used the phrase "law-abiding, responsible citizens." *Bruen*, 597 U.S. at 26, 70. But neither case specifically held that the plain text of the Second Amendment does not apply to felons. *See Williams*, 113 F.4th at 649 ("Nothing in the Second Amendment's text draws a distinction among the political community between felons and non-felons"). As a result, district courts in this Circuit are split on the issue of whether the Second Amendment protects a felon's right to keep and bear arms. *See United States v. Stringer*,

No. 23-CR-20003, 2024 WL 3609058, at *9 (C.D. Ill. July 30, 2024) (recognizing split in authorities); *United States v. Khiry Jackson*, 2023 WL 7160921, at *2-3 (N.D. Ill. Oct. 31, 2023) (collecting cases). Due to the lack of clear guidance or controlling authority, this Court will assume, without deciding, that felons are among "the people" protected by the Second Amendment and will proceed to the second step of the *Bruen* analysis: whether section 922(g)(1)'s disarmament of felons "is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

In *Atkinson v. Garland*, the Seventh Circuit directed district courts to consider five questions when analyzing whether a statute is part of this country's historical tradition of firearm regulation. *Atkinson v. Garland*, 70 F.4th 1018, 1023-24 (7th Cir. 2023). Courts must ask: (1) Does section 922(g)(1) address a "general societal problem that has persisted since the 18th century?" (2) What does history tell us about disarming those convicted of crimes generally and of felonies in particular? (3) Are there broader historical analogues to section 922(g)(1) during the periods that *Bruen* emphasized, including, but not limited to, laws disarming "dangerous" groups other than felons? (4) If there are analogous laws, do those laws supply enough of a historical tradition (as opposed to isolated instances of regulation) to support section 922(g)(1)? and (5) If individualized assessments for a distinction between violent and non-violent felonies are appropriate, how should a court define a non-violent or a non-dangerous felony—and what evidence can a court consider in assessing whether a particular felony conviction was violent? *Id.* The first four *Atkinson* considerations are the most probative here because the definition of a "non-dangerous" felony (the fifth consideration) is not particularly relevant where Whitley's underlying

felony conviction was for Aggravated Unlawful Use of a Weapon—evidently a dangerous felony.

Whitley's motion does not follow the *Atkinson* framework. It cites no historical authority for the proposition that the Second Amendment protects non-law-abiding people's right to keep and bear arms. The Government, however, has compiled a thorough historical discussion to support the constitutionality of section 922(g)(1), which the Court adopts here. (Doc. 29).[2]

First, section 922(g)(1) addresses a "general societal problem that has persisted since the 18th century" in that it disarms people who, like felons, are untrustworthy adherents to the rule of law. The historical record discussed by the Government demonstrates that legislatures historically have had wide latitude to exclude felons from exercising certain rights, including the right to bear arms, as a consequence of their convictions. *See* Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 28-29 (1868); *United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010) (per curiam) ("[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'").

Second, by the time the Second Amendment was ratified in 1791, there was an established tradition of legislatures categorically disarming groups who they feared would disregard the law. These regulations prioritized social order and respect for the

---

[2] Because *Bruen*'s "history and tradition" test necessarily involves a critical examination of historical authorities, "[c]ourts are . . . entitled to decide a case based on the historical record compiled by the parties." *Bruen*, 597 U.S. at 25 n.6.

law over a preexisting right to self-defense. *See Atkinson*, 70 F.4th at 1034 (Wood, J., dissenting) ("During the American Revolution, several states passed laws providing for the confiscation of weapons owned by persons who refused to swear an oath of allegiance to the state or to the United States."). Furthermore, there were no meaningful Founding-era disputes regarding the lawfulness of disarming criminals, and throughout early American history, convicted felons were subject to estate forfeiture and even capital punishment for non-violent felonies. If a felon could potentially be subject to the death penalty or forfeiture of their entire estate as punishment for even a non-violent offense, then certain disarmament would have been an accepted punishment.

Third, this country has a tradition of disarming dangerous persons other than felons. For example, in *Rahimi*, the Supreme Court, after examining the relevant regulatory history, held that an individual subject to a restraining order, *i.e.*, one who poses a credible threat to the physical safety of another, may be temporarily disarmed consistent with the Second Amendment. 602 U.S. at 700; *see also Seiwert*, 152 F.4th at 871 (acknowledging historical arms regulations that were "concerned about keeping firearms away from groups that might pose a threat to the public").

Fourth, these historical analogues are sufficiently similar to section 922(g)(1) and are not "isolated instances of regulation." Section 922(g)(1)'s prohibition on firearm possession is comparable to, and is certainly not greater than, the punishment inflicted on criminals at the founding, which included deprivation of their entire estate or even death. *See Medina v. Whitaker,* 913 F.3d 152, 158 (D.C. Cir. 2019) (explaining that "it is difficult to conclude that the public, in 1791, would have understood someone facing

death . . . to be within the scope of those entitled to possess arms").

Having examined the relevant *Atkinson* considerations, the Court concludes that section 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation. This conclusion fits comfortably into a line of cases that have addressed this and other disarmament regimes under section 922(g). *See e.g.*, *Williams*, 113 F.4th at 662-63 (historical analysis under *Bruen* supported constitutionality of section 922(g)(1)); *Rahimi*, 602 U.S. at 701 (same for section 922(g)(8) concerning individuals subject to a restraining order); *Seiwert*, 152 F.4th at 872 (same for section 922(g)(3) concerning people who unlawfully use or are addicted to controlled substances); *Carbajal-Flores*, 143 F.4th at 888 (same for section 922(g)(5)(A) concerning "aliens" in the United States "illegally or unlawfully"). Whitley, nevertheless, argues that section 922(g)(1) is unconstitutional as applied to him.

In *United States v. Gay*, the Seventh Circuit assumed without deciding "for the sake of argument that there is *some* room for as-applied challenges" by non-violent offenders to section 922(g)(1). *United States v. Gay*, 98 F.4th 843, 846 (7th Cir. 2024).[3] Citing *Bruen*, the Seventh Circuit noted that the Supreme Court repeatedly used the phrase "law-abiding, responsible citizens" when describing people who possess rights under the Second Amendment. *Id.* (quoting *Bruen*, 597 U.S. at 26). The defendant in *Gay* did not fit

---

[3] In *Gay*, the Seventh Circuit sidestepped the question of whether section 922(g)(1) is constitutional, while at the same time finding the defendant's argument that the Second Amendment permits felons to possess firearms notwithstanding section 922(g)(1) "hard to square" with the Supreme Court's statement in *Heller* that "longstanding prohibitions on the possession of firearms by felons" are valid. *Id.* (quoting *Heller*, 554 U.S. at 626, 635). Some courts in this circuit have since interpreted *Gay* as foreclosing facial challenges to § 922(g)(1). *See, e.g.*, *United States v. Montgomery*, No. 23-CR-00623, 2024 WL 4240759, at *1 (N.D. Ill. Sept. 19, 2024); *United States v. Barenas-Reynoso*, No. 19-CR-00351-8, 2024 WL 3509757, at *2 (N.D. Ill. July 23, 2024).

that description, having been convicted of 22 felonies including aggravated battery of a peace officer and possession of a weapon while in prison. *Id.* at 846-47. Gay also possessed the weapon while on parole for his prior felony. *Id.* at 847. The Seventh Circuit emphasized that parole is a form of custody before holding that "parolees lack the same armament rights as free persons." *Id.* The court then concluded that Gay was not a "'law-abiding, responsible' person who has a constitutional right to possess firearms" and rejected his as applied challenge to the constitutionality of section 922(g)(1). *Id.*

Under *Gay*, the nature of the defendant's criminal history and conduct for which he had been indicted was fatal to his as applied challenge. *Id.* at 846-47. To find that section 922(g)(1) was unconstitutional as applied to Gay, the court explained, would trample the repeated acknowledgments in *Heller* and *Bruen* that the Second Amendment grants rights to "law-abiding, responsible citizens." *Id.* at 846-47. So too here. At the time of Whitley's arrest for the instant offense, he had a prior conviction for Aggravated Unlawful Use of a Weapon. Whitley served 24 days in jail for this offense and completed a two-year term of probation after that. To hold section 922(g)(1) is unconstitutional as applied to Whitley would require the Court to conclude that the nature of his criminal history stands apart from that of the defendant in *Gay*. It would also require a finding that that any supposed distinction justifies a departure from *Gay*'s holding that a defendant with prior violent felony convictions cannot lodge a successful as applied challenge to section 922(g)(1). Neither the Supreme Court nor the Seventh Circuit have endorsed such ad hoc judicial balancing, nor has Whitley asked this Court to do so. Instead, the simple answer appears to be the correct one here. Whitley, like the defendant

in *Gay*, "is not a 'law-abiding, responsible' person who has a constitutional right to possess firearms." *Id.* at 847. Thus, section 922(g)(1) is constitutional as applied to Whitley.

## Conclusion

For these reasons, the Court finds that section 922(g)(1) does not violate the Second Amendment as applied to Defendant Baryon J. Whitley. The Motion to Dismiss the Indictment (Doc. 25) is **DENIED**.

**IT IS SO ORDERED.**

DATED:  October 20, 2025

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**